UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 07-972-JVS(RNBx) | Date | March 26, 2008 |
|---|---|---|---|
| Title | Woodward Laboratories Inc., et al. v. Twin Cities Fire Insurance Co. | | |

| Present: The Honorable | JAMES V. SELNA, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Steve Chung for Karla Tunis | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** ( IN CHAMBERS ) Order Denying Plaintiff's Motion for Summary Adjudication as to Duty of Defense and Granting Defendant's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment.

Plaintiffs Woodward Laboratories, Inc. and Kenneth Gerenraich (collectively "Woodward") move for summary adjudication of their first claim for declaratory relief, pursuant to Federal Rule of Civil Procedure 56. Defendant Twin City Fire Insurance Company ("Twin City") opposes the motion and moves for summary judgment on all of Woodward's claims. Woodward opposes Twin City's motion.

I.      Legal Standard

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322-23. If the non-moving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-972-JVS(RNBx) | Date | March 26, 2008 |
|---|---|---|---|
| Title | Woodward Laboratories Inc., et al. v. Twin Cities Fire Insurance Co. | | |

Where the parties have made cross-motions for summary judgment, the Court must consider each motion on its own merits. Fair Hous. Council v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will consider each party's evidentiary showing, regardless of which motion the evidence was tendered under. See id. at 1137.

II.   Discussion

    A.   First Claim for Declaratory Relief

Woodward seeks an order directing Twin City to pay for the costs it incurred in defending an action brought against it by Edward Pribonic ("Pribonic"). (Complaint ¶ 33.)

        1)   Duty to Defend

"[A]n insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." Waller v. Truck Insurance Exchange, Inc., 11 Cal. 4th 1, 19 (1995); Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 276-77 (1966). The insurer's duty to defend persists "until the insurer can demonstrate, by reference to undisputed facts, that *the claim cannot be covered*." Ringler Associates Inc. v. Maryland Casualty Co., 80 Cal. App. 4th 1165, 1186 (Ct. App. 2000) (emphasis original). Similarly, "where there is no possibility of coverage, there is no duty to defend." Waller, 11 Cal. 4th at 19. Thus, "[i]n order to establish a duty to defend, an insured need only establish the existence of a potential for coverage; while to avoid the duty, the insurer must establish the *absence* of any such potential." Ringler Associates Inc., 80 Cal. App. 4th at 1186 (emphasis original).

The determination of "whether a particular policy provides a potential for coverage and a duty to defend" depends on "the principle that interpretation of an insurance policy is a question of law." Waller, 11 Cal. 4th at 18. The general rules of contract interpretation apply to determinations of coverage under an insurance policy. Id. "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." Medill v. Westport Ins. Corp., 143 Cal. App. 4th 819, 828 (Ct. App. 2006).

Courts determine "whether the insurer owes a duty to defend . . . in the first instance by comparing the allegations of the complaint with the terms of the policy."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-972-JVS(RNBx) | Date | March 26, 2008 |
|---|---|---|---|
| Title | Woodward Laboratories Inc., et al. v. Twin Cities Fire Insurance Co. | | |

Waller, 11 Cal. 4th at 19. However, courts are advised not to "designate the third party as the arbiter of the policy's coverage" by relying exclusively on "the pleaded word," but rather are instructed to "examine . . .the potential liability created by the suit." Gray, 65 Cal. 2d at 276.

Here, Woodward asserts that Twin City had a duty, under the "Private Choice Encore! Policy" ("the Policy"), to defend it against the claim made against it by Pribonic. The parties agree that the Policy first came into effect on May 7, 2005 and was renewed on May 7, 2006. (Statement of Uncontested Facts ("SUF")[1] Nos. 15, 18.) They also agree that Pribonic sent a letter describing his contentions to Woodward on December 7, 2004 ("the Decemner 2004 letter"), filed his complaint in California Superior Court on September 9, 2005, and filed and served his first amended complaint on December 23, 2005. (SUF Nos. 2, 4, 8.) Woodward first reported the Pribonic matter to Twin City on February 9, 2007. (SUF No. 19.)

Woodward contends that this provided Twin City with timely notice of a new claim, since Pribonic first claimed that he was an "employee" of Woodward in his Mediation Brief, dated November 27, 2006, and Woodward management did not become aware of the claim until January 2007. (Woodward Opening Br. pp. 8, 11; ASF Nos. 9, 18; Gerenraich Decl. ¶ 6, Ex. H.) Twin City maintains that Pribonic's claim against Woodward was first made by way of the December 2004 letter and, thus, that the claim fell outside the Policy's coverage. (Twin City Opening Br. pp. 9-10.)

Woodward characterizes the dispute as to when Pribonic made a claim that was potentially covered by the Policy as concerning "a core fact." (Woodward Reply Br. p. 1.) However, questions of coverage are not issues of fact, but rather questions of law. See Upland Anesthesia Medical Group v. The Doctors' Co., 100 Cal. App. 4th 1137, 1141-42 (Ct. App. 2002) (observing that "Upland's disagreement about the scope of the coverage under the insurance contract does not constitute a disputed material fact").

---

[1] For ease of reference, the Court refers to Twin City's Statement of Uncontested Facts, numbered 1-52, filed in support of its motion, Woodward's responses to those facts, and Twin City's rebuttal, collectively as the "SUF." (Docket No. 53.) The Court refers to Woodward's Additional Statement of Facts, numbered 1-59, filed in opposition to Twin City's motion, but identical to the Statement of Uncontested Facts filed in support of its own motion, along with Twin City's response (Docket No. 51) and Twin City's own additional facts, numbered 60-112 (Docket No. 50) collectively as the Additional Statement of Facts "ASF."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-972-JVS(RNBx) | Date | March 26, 2008 |
|---|---|---|---|
| Title | Woodward Laboratories Inc., et al. v. Twin Cities Fire Insurance Co. | | |

At oral argument, Woodward argued that because Twin City stated, in a letter, dated June 27, 2007, by which it denied coverage, that Pribonic's claim was not an Employment Practices Claim, that fact is judicially admitted. (Twin City's Request for Judicial Admission ("RJA") Ex. F, p. 53.) Woodward concludes that Twin City is not permitted to take a contrary position now, and further, that the Court may not reach a contrary result.

First, the Court does not accept Woodward's assertion that the statements in Twin City's letter constitute judicial admissions, since those statements are not "in the pleadings in th[is] case, admissions in open court, stipulations of fact, . . . [or] admissions pursuant to requests to admit." M. Graham, Federal Practice and Procedure: Evidence § 7026, pp. 326-28 (Interim Edition). Second, Woodward provides no facts that would support a finding that it detrimentally relied on the denial letter such that Twin City should be estopped from now taking an inconsistent position. Waller, 11 Cal. 4th at 34. On the contrary, Woodward admitted at oral argument that it did not change its position based on Twin City's denial letter. Absent a showing of detrimental reliance, a finding of estoppel is inappropriate. Id.

Moreover, the Court notes that, in a letter to Twin City, dated May 9, 2007, Woodward's counsel characterized Pribonic's claim as an Employment Practices Claim within the coverage provisions of the Policy with reference to Pribonic's complaint, filed June 2005, and first amended complaint, filed January 2006: "Given the allegations in Plaintiff's [i.e. Pribonic's] operative complaint, it appears that coverage exists as to the breach of oral contract claims being made by Plaintiff." (Twin City RJA, Ex. E, p. 43, and pp. 33-34, 41.) This and similar statements are clearly at odds with Woodward's current position that Pribonic's claim did not qualify as an an Employment Practices Claim under the Policy until January 2007. The statements are not, however, deemed judicially admitted.

Since questions of coverage are legal questions for the Court to decide, the Court reviews whether the Pribonic matter is covered under the Policy. The Court must "examine the coverage provisions to determine whether a claim falls within the policy terms" before considering the exclusions. Waller, 11 Cal. 4th at 16. Thus, the Court first addresses whether Pribonic's claim comes within the Policy's coverage of Employment Practices Claims, and then addresses whether it is excluded under another provision.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | SACV 07-972-JVS(RNBx) | Date | March 26, 2008 |
|---|---|---|---|
| Title | Woodward Laboratories Inc., et al.  v. Twin Cities Fire Insurance Co. | | |

2) <u>Coverage</u>

The "Employment Practices Liability Coverage Part" of the Policy provides that:

> "The Insurer shall pay Loss on behalf of the Insureds resulting from an Employment Practices Claim <u>first</u> <u>made</u> <u>against</u> <u>the</u> <u>Insureds</u> <u>during</u> <u>the</u> <u>Policy</u> <u>Period</u> or Extended Reporting Period, if applicable, for an Employment Practices Wrongful Act by the Insureds."

(Morrissey Decl. Ex. B, p. 26; emphasis added.)

The Policy defines an Employment Practices Claim as, <u>inter</u> <u>alia</u>, a "written demand for monetary damages or non-monetary relief commenced by the receipt of such demand," or a "civil proceeding commenced by service of a complaint," "by or on behalf of an Employee . . . or an Independent Contractor."  (<u>Id.</u>)  An Independent Contractor is defined as any person working pursuant to an Independent Contractor Agreement, which is "any express contract or agreement . . . specifying the terms of the Insured Entity's engagement of such Independent Contractor."  (<u>Id.</u> p. 27.)  Finally, an Employment Practices Wrongful Act includes a "breach of any oral, written, or implied employment contract."  (<u>Id.</u>)

Pribonic's December 2004 letter to Woodward describes the agreement he had with Woodward regarding his participation in the development of a touch-free soap dispenser:  "[Pribonic] would head up the development project and manage the process." (Gerenraich Decl. Ex. B, p. 1.)  It describes the compensation Woodward agreed to provide Pribonic for his services:  "$2.50 for each dispenser sold or given away . . . and $.25 per sensor sold for applications other than the dispenser."  (<u>Id.</u>)  It also describes the reason for this compensation structure:  "because [Woodward] . . . lacked cash flow, [it] requested Mr. Pribonic to work for an ownership share of future dispenser revenues, as opposed to working for an hourly rate."  (<u>Id.</u>)

These allegations clearly set forth the terms of an "agreement . . . specifying the terms of [Woodward's] engagement of [Pribonic]," and thus comes within the Policy's definition of Independent Contractor Agreement.  (Morrissey Decl. Ex. B, p. 27.)  The allegations arguably also set for the terms for an employment agreement, where that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-972-JVS(RNBx) | Date | March 26, 2008 |
|---|---|---|---|
| Title | Woodward Laboratories Inc., et al. v. Twin Cities Fire Insurance Co. | | |

Policy defines an "employee" as "past, present, or future employee . . . including any part time, seasonal, temporary, leased or loaned employee." (Id., p. 16.)

The December 2004 letter also clearly alleges breach of the agreement and states that Pribonic "is at last due to be compensated." (Gerenraich Decl. Ex. B, p. 2.) It notes that "Pribonic requests an accounting, and . . . is prepared to discuss a lump sum payment." (Id.)

Thus, the letter alleges breach of an employment agreement, which constitutes an Employment Practices Wrongful Act under the Policy. The letter itself is a "written demand" for compensation. Accordingly, the Court concludes that the December 2004 letter is an Employment Practices Claim within the meaning of the Policy.

The Court finds that the proper construction of the Policy and Pribonic's December 2004 letter requires the conclusion that Pribonic's claim was at least potentially covered from December 2004, when he first asserted it. With an eye toward not allowing Pribonic to "be the arbiter of the policy's coverage," the Court finds that Pribonic did not change the nature of his claim merely by introducing the word "employee" into his allegations at a later stage of the proceedings.[2] Gray, 65 Cal. 2d at 276.

Notwithstanding, the claim evidenced by the letter does not fall within the Policy's coverage, because it was first made in December 2004, and the Policy did not take effect until May 7, 2005. Accordingly, since Pribonic's claim was first made prior to the Policy period, there was "no possibility of coverage," so that Twin City's had no duty to defend. Waller, 11 Cal. 4th at 19.

      3)     Exclusion

---

[2] Ironically, Woodward invokes the admonition not to allow the third-party complainant to be the "arbiter of the policy's coverage," when it argues that "it would be a travesty to deny Woodward . . . coverage under a policy for which it paid dear premiums because the third party - Pribonic - did not assert a 'covered claim' until the end." (Gray, 65 Cal. 2d at 276; Woodward Reply Br. p. 12.) In fact, in order to conclude that Pribonic's claim was covered, the Court would have to find that the potentially covered claim did not arise until Pribonic asserted that he was an "employee" in 2007, at a time when the Policy was effective. Such a finding would necessarily be premised on the notion that Pribonic's choice of words was dispositive as to the scope of the Policy's coverage. The Court rejects that notion.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-972-JVS(RNBx) | Date | March 26, 2008 |
|---|---|---|---|
| Title | Woodward Laboratories Inc., et al. v. Twin Cities Fire Insurance Co. | | |

Moreover, even assuming, arguendo, that the Pribonic did not make an Employment Practices Claim until January 2007, within the effective period of the policy, it would nevertheless have been properly excluded from the policy's coverage as "arising from" a prior or pending claim. (ASF No. 9; Gerenraich Decl. ¶ 6, Ex. H.)

Generally, where an insurer is aware of facts that clearly demonstrate that the subject matter of the third-party's complaint exclusively addresses actions taken before the policy period, it is justified in denying coverage and, therefore, refusing to defend. Saylin v. Cal. Ins. Guarantee Ass'n, 179 Cal. App. 3d 256, 263-64 (Ct. App. 1986); Ringler Associates Inc., 80 Cal. App. 4th at 1187. In the case of claims-made policies such as this one, the insurer may deny coverage when the third-party claim is not first made during the policy period. Pacific Employers Ins. Co. v. Superior Court, 221 Cal. App. 3d 1348, 1356-1357 (Ct. App. 1990) ("a 'claims made' policy . . . is one whereby the carrier agrees to assume liability for any errors, including those made prior to the inception of the policy as long as a claim is made during the policy period") (internal citations and quotation marks omitted).

Here, Twin City contends that the Policy's provision excluding "prior or pending claims" justified its refusal to defend Woodward against Pribonic's claim. The Policy states, in pertinent part:

> "The Insurer shall not pay Loss for any Claim: (2) based upon, arising from, or in any way related to any: (a) prior or pending demand, suit or proceeding against any Insureds as of . . . the applicable Prior or Pending Date in Item 5 of the Declarations."

(Morrissey Decl. Ex. B, p. 29.)

The Prior or Pending Date for the 2005-06 Policy is listed as "05/07/05." (Id., p. 13.)

The question is whether Pribonic's 2007 claim was based upon, arose from, or was in any way related to the claim made in the December 2004 letter.

In interpreting insurance policies, "California courts consistently have adopted

UNITED STATES DISTRICT COURT    JS - 6
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-972-JVS(RNBx) | Date | March 26, 2008 |
|---|---|---|---|
| Title | Woodward Laboratories Inc., et al. v. Twin Cities Fire Insurance Co. | | |

broad definitions of 'arising from' and 'arising out of.'" Continental Casualty Co. v. Richmond, 763 F.2d 1076, 1080 (9th Cir. 1985). "It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy." Medill, 143 Cal. App. 4th at 830. "Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." Id. Therefore, "[s]uch language requires [the court] to examine the conduct underlying the . . . lawsuit, instead of the legal theories attached to the conduct." Id. (internal citations and quotation marks omitted).

In this case, Pribonic's claim in 2007 that he was an "employee" of Woodward and entitled to compensation for services he provided unambiguously "arises from" his December 2004 letter claiming compensation. To the extent Pribonic's 2007 allegations can be described as a claim separate and distinct from the allegations in his December 2004 letter, the claims are unequivocally based on the same alleged events. At all times Pribonic alleged that he had an agreement with Woodward whereby Pribonic would help develop a touch-free soap dispenser and Woodward would compensate him with a share of the profits from the sale of the end product. Pribonic's December 2004 letter, the lawsuits he later filed, and the arguments he made in his Mediation Brief are all based on the same underlying conduct. (Gerenraich Decl. Exs. B, C, D, H.) Thus, while Pribonic's legal theories may have changed, the facts behind them remained the same.

Therefore, Pribonic's later claims are certainly based upon, arose from, and are related to the claims he originally made in his December 2004 demand letter.

Moreover, whether or not Pribonic stated an Employment Practices Claim within the meaning of the Policy in his December 2004 letter, he certainly made a "demand." The Policy's broad language clearly excludes any "prior or pending demand, suit or proceeding," and thus excludes subsequent claims "based on, arising from, or in any way related to" Pribonic's December 2004 claim, whether or not it qualified as an Employment Practices Claim on its own terms. (Morrissey Decl. Ex. B, p. 29.)

Thus, Pribonic's claim against Woodward thus falls squarely within the Policy's exclusion of "prior or pending" claims. Accordingly, there was never a potential for coverage under the Policy, and therefore Twin City never had a duty to defend.

With respect to the first claim for relief, Woodward fails to carry its Celotex

UNITED STATES DISTRICT COURT  JS - 6
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-972-JVS(RNBx) | Date | March 26, 2008 |
|---|---|---|---|
| Title | Woodward Laboratories Inc., et al. v. Twin Cities Fire Insurance Co. | | |

burden on its motion. Twin City does carry its burden on its motion, and Woodward has failed to create a material issue of fact. Thus, summary judgment in Twin City's favor on Woodward's claim for declaratory relief is appropriate.

      B.      Second Claim for Breach of Contract

"It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." Waller, 11 Cal. 4th at 36 (emphasis original).

Accordingly, in light of the Court's ruling that there was no potential for coverage on the facts of this case, Twin City is entitled to summary judgment on Woodward's second claim for breach of contract based on an alleged breach of the implied contractual covenant of good faith and fair dealing.

      C.      Third Claim for Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing

Woodward seeks punitive damages in its third claim for relief. Punitive damages are not available unless there has been a tortious breach of contract. Slottow v. American Casualty Co., 10 F.3d 1355, 1361 (9th Cir. 1993) (citing Cal. Civ. Code § 3294).

Since Woodward's claim for contractual breach of the implied covenant of good faith and fair dealing is precluded by this Court's finding that there was no breach, so too is its claim for tortious breach of that duty. In other words, where Twin City did not have, and so did not breach, a duty to defend, neither did it breach the implied covenant of good faith and fair dealing, tortiously or otherwise.

Accordingly, Twin City is entitled to summary judgment on Woodward's third claim for tortious breach of the implied covenant covenant.

III.    Conclusion

Therefore, since the Court finds that Twin City did not owe Woodward a duty to defend, the Court grants Twin City's motion for summary judgment on all of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 07-972-JVS(RNBx) | Date | March 26, 2008 |
|---|---|---|---|

| Title | Woodward Laboratories Inc., et al.  v. Twin Cities Fire Insurance Co. |
|---|---|

Woodward's claims against it, and denies Woodward's motion for summary judgment.

Further, in light of the above, the Court denies Woodward's Rule 56(f) request for a continuance to conduct discovery on the issues of whether Twin City's conduct was reasonable and whether that conduct gave rise to punitive damages.  No amount of discovery can cure the fact that there was no duty to defend, and hence, no predicate claim to support a punitive damage recovery.

|  | 0 | : | 0 |
|---|---|---|---|
| Initials of Preparer | | SC | |